HERBERT N. FELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15984. Promulgated November 9, 1929.

*John W. Townsend, Esq., J. C. Peacock, Esq.,* and *C. E. Koss, Esq.,* for the petitioner.

*P. L. Peyton, Esq.,* for the respondent.

82

OPINION.

LITTLETON: When the petitioner made a loan of $20,000 to the McKnight Realty Co., he did not acquire the securities which were pledged as collateral; what he received was a promissory note of $20,000 and the securities remained the property of the corporation. The petitioner actually came into ownership of the securities in 1914 when there was a default on the note and the securities were bid in by the petitioner at an auction sale for an amount less than the face value of the note. Nor do we think that the auction price bid is representative of a cost of the securities which might be considered as a basis for gain or loss on their future disposition. Apparently, the corporation, and perhaps others, did not bid because they were aware of the amount of the loan for which the securities

were pledged as collateral and considered that the petitioner would protect himself on the loan to the extent of the market value of the securities. In this situation the petitioner bid only $10 and, there being no other bid, the auction sale was completed on this basis. The petitioner testified that he bid this small amount since the auctioneer's commission was based upon the amount of the sale. Apparently, the bid price was merely an amount to cover the auctioneer's commission and, in any event, so long as the bid price was less than the face amount of the note, there would be no occasion for the petitioner to make any new outlay of money on account of his bid other than expenses of the sale. Had there been competitive bidding and had the petitioner bid the property in for less than the face of the note, but for a substantial amount, we do not see that the situation would have been different from what we have here with only a nominal bid other than to the extent the bid price might fix the market value of the securities. Outside of a greater commission in the case of the greater bid price, the petitioner would have paid no more in one instance than in the other. Accordingly, we regard it as unsound to follow the Commissioner's contention that there was a closed transaction in 1914 in which the petitioner sustained a loss of $19,990—$20,000, amount of note, less $10, auction price—and we are also of the opinion that the $10 is not a cost of the securities which would serve as a starting point for the computation or gain or loss on account of their future disposition.

We are of the opinion, however, that the market value of the securities when acquired in 1914 should be used as the starting point from which we would compute gain or loss on account of their future disposition. What that value was, we do not know, our only evidence being the statement of the petitioner that he considered them worth the face value of the note, and this we consider as insufficient, but from the fact that when the securities were put up at public auction no bids were received, other than the nominal bid of the petitioner, there is strong reason for considering that their market value was not in excess of the value of the note. And subsequent events as to their disposition tend to confirm such a conclusion. But whether there was a loss in 1914 and, if so, how much, we are not here called upon to determine, for the reason that 1914 is not before us in the consideration of a deficiency for such year. It may well be, as the petitioner points out, that this was not a closed transaction in 1914 in the sense that there was a loss of the difference between the amount loaned, $20,000, plus the amount actually paid to the auctioneer, and the market value of the securities received, for the reason that we have no evidence as to the cancellation of the note or whether the petitioner might not have recovered further

from the corporation on account of any deficiency which might then have existed, but we do not regard this as conclusive in deciding the question before us. What did happen, in so far as we are now concerned, is that in 1914 there was a realization by the petitioner on the note held by him to the extent of the securities then received. Title and unqualified ownership of the securities then came to him, property which he had not theretofore owned, and he got them not because he paid $20,000 therefor at that time, plus the auction-bid price, but because of the rights he then had under a note which he had received in exchange for $20,000 some time prior thereto. The fair market value of the securities in 1914 would not only be the basis upon which this factor would be taken into consideration in determining the extent of the loss then realized, if any, but also would serve as the starting point or cost upon which to compute gain or loss upon their subsequent disposition. Cf. *Francis Perot's Sons Malting Co.*, 1 B. T. A. 562.

It follows from what we have said that a loss claimed by the petitioner in 1919, on the basis of the difference between the amount of the loan and the amount realized in 1917 and 1919 upon the sale of the greater part of the securities, can not be allowed. The Commissioner not only denied the loss in 1919, but also increased income for such year in the amount of $10,115. The record shows that of the securities received in 1914, petitioner sold only the stock of the Steinway Park Realty Co. in 1919, receiving therefor $2,125, and that the realization on the bonds of the McKnight Realty Co., which the Commissioner included in taxable income for 1919, took place in 1917. The Commissioner admits error in this respect and concedes that the only amount to be taxed in 1919 on account of the sale of these securities is $2,115. Since we do not have evidence as to the fair market value in 1914 of the securities sold in 1919, we are unable to do other than affirm the Commissioner's action in this respect.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

ARUNDELL concurs in the result.

---

MURDOCK, dissenting: I dissent from that part of the opinion which sustains the action of the Commissioner in holding that the petitioner had a gain of $2,115. When all of the circumstances in this case are considered, it is quite apparent that the petitioner has not had any gain, but, on the contrary, has had a loss which he has reduced as far as possible by means of the collateral security which was in his hands.

TRUSSELL agrees with this dissent.